**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| VICTOR G. PEREZ, individually and as Assignee of PINATA GRAPHICS, INC.., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:08-cv-04364 |
| AMCO INSURANCE COMPANY, NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY, and ALLIED PROPERTY & CASUALTY INSURANCE COMPANY, | ) ) ) ) ) | Judge Robert M. Dow, Jr. Magistrate Judge Morton Denlow |
| Defendants. | ) ) ) | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Now come the Defendants, AMCO Insurance Company ("AMCO"), Nationwide Property & Casualty Insurance Company ("Nationwide"), and Allied Property & Casualty Insurance Company ("Allied"), by and through their attorneys, John D. Hackett and Jamie L. Hull of Cassiday Schade LLP, and respectfully submit their Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.    INTRODUCTION

This lawsuit arises out of two insurance claims for damage to a printing press. AMCO insured the plaintiffs, and the AMCO policies cover business income and extra expense caused by equipment breakdown and damage to business personal property. In connection with the fire loss claim, AMCO hired forensic accountants to review plaintiffs' financial documentation and determine the actual amount of business income and extra expense the plaintiffs sustained as a result of the damage to the printing press. AMCO paid the plaintiffs amount the forensic accountants

determined AMCO owed, but the plaintiffs contend that their actual losses were higher than the amount AMCO paid.

The plaintiffs are now improperly attempting to convert what should be a straightforward contractual dispute regarding the amount of business income and extra expense caused by the damage to the printing press into a 162-paragraph, three-count complaint, sounding in contract and tort. The plaintiffs further seek to escalate the costs and complexities of this matter by asserting a claim for statutory penalties under Section 155 of the Illinois Insurance Code. For the reasons discussed below, however, the negligence and Section 155 claims should be dismissed. Moreover, Nationwide and Allied should be dismissed as defendants from this matter since the insurance policies in question were clearly issued by AMCO.

## II.    PLAINTIFFS' COMPLAINT

The plaintiffs allege that the frame of their printing press cracked on November 24, 2005, and that the damage was reported to AMCO, which reinsured equipment breakdown claims with Hartford Steam Boiler Inspection and Insurance Company ("Hartford"). (Compl. at ¶¶22-25). The plaintiffs also allege that Hartford retained Louis Benbow to supervise the repair of the printing press, and that Mr. Benbow was acting as an agent of Hartford and subagent of AMCO. (Compl. at ¶¶29-30). Mr. Benbow allegedly authorized temporary repairs, which were performed in January 2006, and the press was placed back into service. (Compl. at ¶33-34). The manufacturer's representative, American Pro Tech ("APT"), allegedly recommended against further use of the press with only the temporary repairs in place, but Mr. Benbow allegedly refused to authorize permanent repairs. (Compl. at ¶¶36-39).

According to the plaintiffs, the continued use of the printing press resulted in further interruptions and slowdowns caused by sheets of paper being pulled into the drying/curing system of the press. (Compl. at ¶43). The plaintiffs also allege that on July 22, 2006, a fire occurred inside the printing press as a result of paper which had become trapped in the drying/curing system of the machine during use and operation of the press. (Compl. at ¶44).

The plaintiffs allege that AMCO retained the accounting firm of Meaden & Moore ("M&M") to examine Pinata's business income and extra expense claim. (Compl. at ¶55). Pinata allegedly produced its financial statements and other documents to M&M on September 13, 2006. (Compl. at ¶56). With regard to the cracked frame, Pinata allegedly submitted a business income claim in the amount of $2,336,535.75 (including $271,410.55 in extra expense; $982,735.68 in continuing normal operating expenses; and $1,082,389.52 in lost income). (Compl. at ¶58). With regard to the fire, Pinata allegedly submitted a business income claim in the amount of $832,323.78 (including $51,259.68 in extra expense; $240,532.34 in continuing normal expenses; and $540,531.76 in lost income). (Compl. at ¶59). The plaintiffs allege that AMCO made advance payments for the fire claim totaling $127,500, but that M&M subsequently determined that Pinata had not sustained a business income loss as a result of the cracked frame and fire damage. (Compl. at ¶¶60-68).

The plaintiffs allege that on November 26, 2007, the parties negotiated a settlement of Pinata's business income and extra expense losses for the cracked frame, and that Pinata released Hartford, AMCO, Allied and Nationwide from any and all claims resulting from the cracked frame claim but reserved all claims for damages caused by the fire. (Compl. at ¶69). The plaintiffs further allege that on November 26, 2007, AMCO retained a second accounting firm to

examine Pinata's business income and extra expense claim for the fire.  (Compl. at ¶70).  AMCO allegedly advised Pinata that the second accounting firm had calculated Pinata's business income and extra expense loss in the amount of $139,125.00.  (Compl. at ¶71).  On December 21, 2007, AMCO tendered a check to Pinata in the amount of $12,125, which together with the sums previously advanced by AMCO, brought the total paid by AMCO to $139,125.  (Compl. at ¶72).  The plaintiffs allege that AMCO refused to issue further payment, and that Pinata dissolved in April 26, 2007 and assigned all of its rights to the claim to Mr. Perez.  (Compl. at ¶73-75).

The plaintiffs' complaint includes causes of action against AMCO, Allied and Nationwide for breach of contract regarding the business income and extra expense claim for the July 22, 2006 fire damage to the printing press, wherein the plaintiffs allege that AMCO paid them $139,125, but that their actual loss from the fire damage was $1.5 million.  The complaint also contains causes of action for negligent claims adjustment by Mr. Benbow (Count II), and violation of Section 155 of the Illinois Insurance Code (Count III).

### III.     ARGUMENT

As discussed below, Nationwide and Allied should be dismissed as defendants from this lawsuit because the insurance policies in question were clearly issued by AMCO.  Count II of the complaint, the cause of action for negligence, must also be dismissed because it is barred by the economic loss doctrine, it fails to state a cognizable claim under Illinois law, it is preempted by Section 155 of the Insurance Code, and it is barred by the release the plaintiffs executed for the cracked frame claim.  Count III, which purports to state a cause of action for violation of Section 155 of the Illinois Insurance Code, must also be dismissed because it is expressly predicated on the allegations contained within Count II for negligent claims handling and, alternatively, there is a

*bona fide* dispute between AMCO and the plaintiffs regarding the total amount of business income and extra expense loss the plaintiffs sustained as a result of the July 22, 2006 fire damage to the printing press.

**A.      Standard for 12(b)(6) Motion to Dismiss.**

Motions to dismiss are governed by Rule 12(b) of the Federal Rules of Civil Procedure, which allows for dismissal for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  While in reviewing a dismissal under Rule 12(b)(6) the Court is obliged to accept all well pleaded facts alleged in the complaint as true and draw all reasonable references in favor of the nonmoving party, Northern Trust Co. v. Peters, 69 F.3d 123, 129 (7th Cir. 1995), a complaint must either contain direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.  Herdrich v. Pegram, 154 F.3d 362, 369 (7th Cir. 1998), *rev'd* 120 S.Ct. 2143 (2000).  A court can properly grant a motion to dismiss on the pleadings if there is no reasonable prospect that the plaintiff can make out a cause of action from the events related in the complaint.  Carl Sandburg Village Condominium Association No. 1 v. First Condominium Development Co., 758 F.2d 203, 207 (7th Cir. 1985).

**B.      Nationwide and Allied Must be Dismissed.**

While the plaintiffs repeatedly allege throughout their complaint that "AMCO and/or Nationwide and/or Allied" handled the claims and made payments for the business income and extra expense claims, it is axiomatic the relationship between an insurance company and its insured is a contractual relationship.  Leslie v. Standard Acc. Ins. Co., 327 Ill.App. 343, 64 N.E.2d 391 (4th Dist. 1945).  But for the existence of the insurance contracts, the plaintiffs would not have any basis, whatsoever, to seek recovery of their alleged business income losses related

to the damaged printing press. It is also undisputed that AMCO, rather than Allied or Nationwide, issued the contracts in dispute. (Compl. at ¶7-9). There is no privity of contract, however, between the plaintiffs and either Nationwide or Allied. Moreover, AMCO is willing to stipulate that in the event a judgment is entered against the defendants in connection with this matter (which the defendants deny), AMCO would be the party solely responsible for payment. Therefore, Nationwide and Allied must be dismissed from this case. Alternatively, Counts I and III must be dismissed as against Nationwide and Allied because those entities are not parties to the insurance contract that forms the basis for those counts.

C.    **Count II Must Be Dismissed.**

In Count II, the plaintiffs allege that AMCO, Allied and Nationwide breached a duty to exercise supervision and control over the repair of the printing press prior to the fire damage on June 22, 2006. In this regard, the plaintiffs allege that the cracked frame claim was handled by Hartford, and that Hartford retained adjusters, investigators and accountants to investigate the cracked frame claim. (Compl. at ¶25, 27, 28). The plaintiffs also allege that Hartford retained Mr. Benbow to investigate and supervise the repair of the printing press, and that Mr. Benbow served as agent of Hartford, and a subagent of AMCO, Allied and Nationwide, with respect to the investigation and supervision of the repair of the printing press. (Compl. at ¶29-30). The plaintiffs further allege that Mr. Benbow was negligent in his supervision of the repair of the printing press, and that Mr. Benbow's negligence resulted in the fire damage to the press. For the reasons discussed below, Count II must be dismissed.

1.    **Count II Fails to State a Valid Cause of Action.**

The plaintiffs allege that AMCO, Allied and Nationwide are all vicariously liable for the negligence of an insurance adjuster who Hartford retained to investigate the damage to the printing press.  However, there is no such recognized cause of action in Illinois.  Under Illinois law, when the terms of a contract are clear and unambiguous, the terms alone determine the duties of the parties.  Nielsen v. United Services Automobile Ass'n, 244 Ill.App.3d 658, 612 N.E.2d 526 (2d Dist. 1993); Marathon Plastics, Inc. v. International Ins. Co., 161 Ill.App.3d 452, 464, 514 N.E.2d 479 (4th Dist. 1987), *overruled on other grounds by* Travelers Ins. Co. v. Eljer Mfg., 197 Ill.2d 278, 757 N.E.2d 481 (Ill. 2001).  Illinois courts have recognized that an insurer has a contractual duty to deal fairly with the insured, and that an insurance contract includes an implied duty of good faith and fair dealing with respect to an insured.  Nielsen, 244 Ill.App.3d 658, 612 N.E.2d 526 (2d Dist. 1993).  However, Illinois courts have not recognized a cause of action against an insurer for negligence or negligence claims handling of the type alleged in Count II of the plaintiff's complaint.

To state a cause of action for negligence, a complaint must allege facts sufficient to show the following elements:  the existence of a duty, breach of the duty, and injury to the plaintiff proximately caused by the breach.  Ziemba v. Mierzwau, 142 Ill.2d 42, 45, 566 N.E.2d 1365 (Ill. 1991).  Whether a legal duty exists is a question of law to be determined by the court.  Ward v. K-Mart Corp., 136 Ill.2d 132, 554 N.E.2d 223 (Ill. 1990).  The plaintiffs contend that Mr. Benbow, an insurance adjuster hired by Hartford, was negligent in his investigation of the plaintiff's cracked frame claim.  The majority of jurisdictions have ruled that insurance adjusters, such as Mr. Benbow, do not owe a general duty of care to an insured.  See, e.g., Charleston Dry Cleaners & Laundry v. Zurich American Ins. Co., 586 S.E.2d 586 (S.C. 2003); Meineke v. GAB

- 7 -

Business Services, Inc., 991 P.2d 267 (Ariz. Ct. App. 1999); Sanchez v. Lindsey Morden Claims

Services, Inc., 84 Cal.Rptr.2d 799 (Cal. App. 1999).  Accordingly, as the plaintiffs do have not

have a valid cause of action against Mr. Benbow directly, they likewise do not have a cause of

action against AMCO as the alleged principal of Mr. Benbow.  Towns v. Yellow Cab Co., 382

N.E.2d 1217, 1221-1222 (Ill. 1978); Levitt v. Hammonds, 628 N.E.2d 280, 282-83 (1st Dist.,

1993).

      Although the plaintiffs allege that Mr. Benbow was a subagent of AMCO, Allied and

Nationwide, the test of agency under Illinois law is whether the alleged principal has the right to

control the manner and method in which work is carried out by the alleged agent, and whether

the alleged agent can affect the legal relationships of the principal.  Oliveira-Brooks v. RE/MAX

International, Inc., 372 Ill.App.3d 127, 865 N.E.2d 252, 258 (1st Dist. 2007).  Here, however, the

plaintiffs allege that Hartford, rather than AMCO, Allied or Nationwide, retained Mr. Benbow

and exercised control over the handling of the cracked frame claim.  In this regard, the plaintiffs

allege that AMCO reinsured equipment breakdown claims through Hartford (Compl. at ¶25); and

that Hartford retained adjusters and investigators, including Mr. Benbow, to investigate the

damage to the printing  press and the loss of business income sustained a  result of the cracked

frame property loss.  (Compl. at ¶28-29).  Accordingly, Mr. Benbow cannot qualify as a

subagent of AMCO, Allied and Nationwide as a matter of law because those entities did not

exercise control over how Mr. Benbow handled the claim.

      **2.**    **The Negligence Action is Preempted by Section 155.**

      Count II must also be dismissed because the cause of action for negligence is preempted by

Section 155 of the Illinois Insurance Code.  In Count II, the plaintiffs are attempting to obtain a

recovery from AMCO, Allied and Nationwide that is not limited or governed by the provisions, conditions and terms of the insurance contract itself.   This point is evident from the fact that in the prayer for relief in Count I, the breach of contract count, the plaintiffs seek to recover "the amount of its actual loss of business income and extra expenses sustained, in excess of $139,125" (i.e., the amount AMCO paid under the policy).  In the prayer for relief for Count II, however, the plaintiffs seek to recover "other damages caused by the loss of key operating personnel and customers, which led to the dissolution of Pinata."

Under Illinois law, the plaintiffs' remedy is limited to the insurance contracts themselves, and Section 155 of the Insurance Code provides the sole extra-contractual remedy to policyholders.  215 ILCS 5/155.  The Illinois Supreme Court has held that allegations of bad faith or unreasonable vexatious conduct are not sufficient to constitute a separate cause of action in Illinois.  <u>Cramer v. Ins. Exchange Agency</u>, 174 Ill.2d 513, 675 N.E.2d 897 (Ill. 1997).  <u>See also</u> <u>Chicago Motor Club v. Robinson</u>, 316 Ill.App.3d 1163, 739 N.E.2d 889 (1st Dist. 2000)(finding that tort-based claims related to the manner in which a claim is handled are superseded by Section 155 of the Illinois Insurance Code).  Therefore, the plaintiffs' remedy, if any, is limited to contract damages under the AMCO policies or, in the event that there was a violation of Section 155, which the defendants deny, the only alternative remedy would be the statutory penalties set forth in Section 155.  Under either event, however, Count II must be dismissed.

### 3.    <u>The Economic Loss Doctrine Bars the Negligence Claim.</u>

The plaintiffs are attempting to recover their alleged economic losses from the damage to the printing press from AMCO, Allied and Nationwide under a tort theory of recovery even

though there is an insurance policy in force between the plaintiffs and AMCO that sets forth the terms, conditions and requirements for recovery. Under Illinois law, the economic loss doctrine prevents a plaintiff from recovering economic losses under a tort theory. Moorman Manufacturing Co. v. National Tank Co., 91 Ill.2d 69, 435 N.E.2d 443 (Ill. 1982); Nielson v. United Services Auto. Ass'n, 244 Ill.App.3d 658, 612 N.E.2d 526 (2d Dist. 1993)(insurer not liable for economic losses under negligence theory); First Midwest Bank, N.A. v. Stewart Title Guar. Co., 355 Ill.App.3d 546, 823 N.E.2d 168 (1st Dist. 2005)(insurer not liable for economic losses under negligent misrepresentation theory).

Here, the plaintiffs are attempting to convert what should be a straightforward breach of contract claim into a tort claim in an effort to recover economic losses allegedly caused by the fire damage to the printing press. As discussed above, however, the plaintiffs submitted their claims under the AMCO policies, settled their claim for losses related to the cracked frame claim, and received payments from AMCO for the fire damage to the printing press. The economic loss doctrine precludes the plaintiffs from attempting to circumvent the insurance contract and recover their economic losses under a negligence theory. Therefore, Count II should be dismissed as it is barred by the economic loss doctrine.

### 4.    Count II is Barred by the November 24, 2005 Release.

Count II must also be dismissed because the plaintiffs have already released Hartford, AMCO, Allied and Nationwide "from any and all claims and causes of action for property damage and business interruption, arising as a result of Cracked Frame Loss which occurred on or about November 24, 2005." The plaintiffs acknowledge, in paragraph 69 of the Complaint, that "the parties negotiated a settlement of Pinata's claim for loss of business income and extra

expense caused by the cracked frame property loss"; and that "[i]n consideration of the payment of certain sums, Pinata and Perez released Hartford, AMCO, Nationwide and Allied from any and all claims resulting from the cracked frame property loss.…"  (A copy of the November 26, 2007 Settlement Agreement and Release is attached hereto as Exhibit "A").

According to the plaintiffs, Mr. Benbow was negligent in his handling of the cracked frame claim.  Under Illinois law, a release is the abandonment of a claim to the person against whom the claim exists and is a contract to be construed under traditional contact law.  Hurd v. Wildman, Harrold, Allen & Dixon, 303 Ill.App.3d 84, 707 N.E.2d 609, 613 (1st Dist. 1999).  The intentions of the parties to the contract must be determined from the instrument itself.  Id.

A review of the Settlement Agreement and Release clearly establishes that plaintiffs released Hartford, AMCO, Nationwide and Pinata from "all claims related to property damage and business interruption arising out of the Cracked Frame Loss."  Count II of plaintiffs complaint is solely based on the purported negligence of Mr. Benbow, who Hartford retained to investigate the damage to the printing press.  Accordingly, as plaintiffs have already released AMCO, Nationwide and Allied from all claims related to property damage arising out of the cracked frame loss, they are barred from asserting their negligent cause of action related to the very same damage to the printing press.

**D.    <u>Count III Must Be Dismissed.</u>**

Count III, the action for violation of Section 155 of the Insurance Code, must also be dismissed as it expressly predicated on the allegations contained within Count II for negligent claims handling.  Alternatively, there was a *bona fide* dispute between AMCO and the plaintiffs

regarding the total amount of business income and extra expense loss incurred by the plaintiffs for the fire damage to the printing press.

The plaintiffs allege that AMCO is guilty of vexatious and unreasonable delay in that it failed to follow the recommendations of Ryobi and APT for permanent repairs to the printing press; required further adjustments, testing and use of the press for several months following temporary repairs contrary to the advise of Ryobi and APT; disregarded the danger presented by paper becoming trapped in the press during use and operation; disregarded warnings from Ryobi and APT regarding potential further damage to the press; disregarded the true amount of the claim submitted by Pinata for loss of business income; relied upon M&M's opinion that Pinata had an increase in net income as a result of the fire loss "when that opinion was patently false and not made in good faith or with reasonable basis to believe it was true"; and failed to adjust Pinata's claim for loss of business income and extra expense "in a fair and expeditious manner."

In deciding whether an insurance company has violated Section 155, the court considers the totality of the circumstances, and the factors to consider include the insurer's attitude, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of his property. Mobil Oil Corp. c. Maryland Cas. Co., 288 Ill.App.3d 743, 681 N.E.2d 552 (1st Dist 1997). If a *bona fide* dispute existed regarding the scope of the insurance coverage, an insurer's delay in settling a claim may not violate Section 155. Valdovinos v. Gallant Ins. Co., 314 Ill.App.3d 1018, 733 N.E.2d 886 (2d Dist. 2000).

Here, plaintiffs Section 155 Count is not based on a valid claim for coverage. Count III incorporates by reference, and largely relies upon, the purported negligence claims set forth in Count II. As discussed above, however, Count II fails to state a viable cause of action under

Illinois law and must be dismissed with prejudice. Consequently, plaintiffs cannot sustain their claim for extra-contractual damages pursuant to Section 155, and therefore, Count III must be dismissed.

Alternatively, the allegations of plantiffs Complaint demonstrate that there was a *bona fide* dispute between AMCO and the plaintiffs regarding the total amount of business income and extra expense loss incurred by the plaintiffs for the fire damage to the printing press. AMCO retained adjusters, investigators and accountants to investigate the damage to the Ryobi Press and the loss of business income sustained as a result of the fire loss. (Compl. at ¶ 48). AMCO authorized permanent repairs to Ryobi Press that had been recommended by Ryobi and American Pro Tec and those repairs were performed. (Compl. at ¶¶49-50). AMCO authorized repair of the fire damage and those repairs were performed. (Compl. at ¶¶52-54). After the plaintiffs submitted the business income and extra expenses calculations to Hartford and AMCO, AMCO made advance payments in January and February 2007 while the forensic accountant reviewed the insureds' calculations. (Compl. at ¶¶60-62). The forensic accountant subsequently issued reports opining as to the amount of business loss income incurred by Pinata. (Compl. at ¶¶63-68). The parties negotiated a resolution of Pinata's claim for loss of business income and extra expense that culminated in a negotiated settlement. (Compl. at ¶69). AMCO agreed to retain a second accounting firm to examine Pinata's claim for loss of business income and extra expense caused by the fire loss. (Compl. at ¶70). AMCO then tendered a check to Pinata to coincide with the findings of the second accounting firm. (Compl. at ¶72). Under the circumstances, it is clear that a *bona fide* dispute existed regarding the total amount of business

income and extra expense loss incurred by the plaintiffs for the fire damage to the printing press, and therefore, Count III must be dismissed.

## <u>CONCLUSION</u>

WHEREFORE, based on the foregoing arguments and authorities, and pursuant to Fed.R.Civ.P. 12(b)(6), the Defendants respectfully requests that this Court enter and Order:

A.    Dismissing Nationwide and Allied as named defendants;

B.    Dismissing Count II in its entirety for failure to state a claim;

C.    Dismissing Count III in its entirety for failure to state a claim; and

D.    Granting any other relief that this Court deems just and appropriate.

Date:    August 7, 2008

Respectfully submitted,


By:    s/  Jamie L. Hull_____
       John D. Hackett
       Jamie L. Hull
       Attorneys for Defendants
       CASSIDAY SCHADE LLP
       20 N. Wacker Dr., Suite 1040
       Chicago, Illinois 60606
       (312) 641-3100
       ARDC# 6273814

7147141

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release by and between Hartford Steam Boiler Inspection and Insurance Company, ("HARTFORD") AMCO Insurance Company, a Nationwide Company ("ALLIED / NATIONWIDE") Piñata Graphics, Inc., ("PINATA") and Victor Perez (PEREZ) is effective November _26_, 2007.

WHEREAS, on or about November 24, 2005, PINATA suffered a loss of property it claims is covered under a certain policy of property insurance issued by ALLIED/NATIONWIDE, being insurance policy number ACP BPS 7101686319, with a policy term of December 20, 2004 to December 20, 2005, when the frame of PINATA's RYOBI printing press machine Unit 2 cracked ("Cracked Frame Loss"); and

WHEREAS, PINATA filed claims for Property Damage and Business Interruption for the Cracked Frame Loss under the said policy; and

WHEREAS, ALLIED/NATIONWIDE has made certain payments under the Property Damage coverage and Business Income coverage of the policy for the Cracked Frame Loss; and

WHEREAS, the parties, in consideration of the payment by ALLIED/ NATIONWIDE of an additional $100,000.00 (One hundred thousand dollars) under the Business Interruption coverage of the policy, payable to Pinata Graphics, Inc., and its attorneys Sanchez Daniels & Hoffman, LLP, agree to settle and compromise all claims and all causes of action under the Business Income coverage of the policy, related to the Cracked Frame Loss; and

WHEREAS, PINATA has submitted a claim for payment of an additional $15,323.00 for property damage to its RYOBI printing press caused by the Cracked Frame Loss, which claim remains pending, and for which HARTFORD and ALLIED/NATIONWIDE agree to consider payment, upon proper documentation; and

WHEREAS, otherwise the parties wish to settle and compromise all claims related to property damage and business interruption arising out of the Cracked Frame Loss; and

WHEREAS, on or about July 22, 2006, a fire occurred which caused damage to the RYOBI printing press, which PINATA claims is covered under a certain policy of property insurance issued by ALLIED/NATIONWIDE, being insurance policy number ACP BPS 7111686319, with a policy term of December 20, 2005 to December 20, 2006 ("Fire Loss"); and

WHEREAS, PINATA has made claim for property damage and business interruption under the said policy effective December 20, 2005 to December 20, 2006, for the Fire Loss, and which claims remain pending; and

WHEREAS, ALLIED/NATIONWIDE denies loss or damage to the extent claimed, and in particular, denies loss to the extent claimed for business interruption caused by the Fire Loss.



EXHIBIT

A

NOW THEREFORE, in consideration of the mutual promises and understandings, the parties agree as follows:

1.      Upon the execution and delivery of this Settlement Agreement and Release, ALLIED/NATIONWIDE shall pay the sum of $100,000.00 payable to Pinata Graphics, Inc., and its attorneys Sanchez Daniels & Hoffman, LLP.

2.      PINATA on behalf of itself, its predecessors, successors and assigns and PEREZ, hereby release and forever discharge ALLIED/NATIONWIDE, and HARTFORD and their predecessors, successors, and assigns, of and from any and all claims and causes of action for property damage and business interruption, arising as a result of Cracked Frame Loss which occurred on or about November 24, 2005.

3.      PINATA, on behalf of itself, its predecessors, successors and assigns, and PEREZ do not release claims related to the Fire Loss, and hereby reserve claims and causes of action related to the Fire Loss.

4.      PINATA and PEREZ warrant and represent that they own 100% of all claims which have been made, and which arise out of the Cracked Frame Loss which occurred on or about November 24, 2005, and the Fire Loss, which occurred on or about July 22, 2006.

5.      This Agreement shall be governed in accord with the law of Illinois.

6.      This Agreement may be executed in counterparts, and each such counterpart shall be deemed an original.

7.      This Agreement embodies and constitutes the final and entire understanding and agreement of the parties with respect to the settlement and release of claims specified herein.

HARTFORD STEAM & BOILER
INSURANCE COMPANY

By: _Michael Gregson_

_Claims Representative_

Its: _General Adjuster_

ALLIED / NATIONWIDE INSURANCE CO

By: _Mark Johnson_

Its: _Sr. Commercial Claims Rep._

PINATA GRAPHICS, INC.

By: _[signature]_

Its: _President_

F:\DATA\HISTORY\SD\8854R\Release 2.wpd

VICTOR PEREZ

_[signature]_

_Nov. 28th 2007_

2