# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| VICTOR G. PEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 08-cv-4364 |
| | ) | |
| AMCO INSURANCE COMPANY, | ) | Judge Robert M. Dow, Jr. |
| NATIONWIDE PROPERTY & CASUALTY | ) | |
| INSURANCE COMPANY, and ALLIED | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' motion to dismiss Plaintiffs' complaint [7]. For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part. The Court grants Defendants' motion to dismiss Count II of the complaint, but denies the motion to dismiss Count III. Both rulings apply as to all Defendants.

**I.  Background**[1]

Plaintiff, Victor G. Perez ("Perez"), is the former sole-shareholder and current assignee of a now-defunct commercial printing business. The company was called Pinata Graphics, Inc. ("Pinata"). Plaintiff filed his complaint (see [1-2]) on June 30, 2008 in the Circuit Court of Cook County. Defendants removed the action to this Court [1] pursuant to 28 U.S.C. § 1441.

All of the Defendants are insurance companies: AMCO Insurance Company ("AMCO"), Nationwide Property & Casualty Insurance Company ("Nationwide"), and Allied Insurance Company ("Allied"). Plaintiff states that Nationwide and Allied are both "affiliated" with

---
[1] For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

AMCO and that both "provide[] claims adjustment services for claims brought by policyholders of AMCO." Compl. ¶¶ 5, 6. All three Defendants' names appear on the first page of the insurance policy that is at the heart of this case. See [1-2] at 25.[2]

AMCO issued an insurance policy to Pinata and Plaintiff (Compl. ¶¶ 7-10), the details of which are laid out in the complaint (*id.* at 13-16), but which are not at issue for purposes of Defendants' motion to dismiss. There are two aspects of the policy that are worth noting, however. First, the policy covered not only property but also certain lost business income. *Id.* ¶ 15. Second, the policy covered Pinata's Ryobi 685 XL S/N 1084 printing press with Aqueous/U.V. Coater System ("the Press"). See *id.* ¶ 17.

The Press was "state of the art" and during the four year period from 2001 to 2005, Pinata enjoyed a growth in its business income. Compl. ¶ 20. In 2005, however, the Press sustained a cracked frame as a result of an accident covered by the insurance policy. Plaintiff gave notice of the crack to AMCO, which in turn gave notice to Nationwide and Allied. One or more of the Defendants "retained adjusters, investigators and accountants to investigate the damage to the * * * Press and the loss of business income sustained as a result of the cracked frame property loss." *Id.* ¶¶ 21-23. One or more of the Defendants also gave notice of the cracked frame to Hartford Steam Boiler Inspection and Insurance Company ("Hartford"), whom Plaintiff alleges was AMCO's reinsurer. Hartford in turn retained Louis Benbow to investigate and supervise the repair of the press. *Id.* ¶¶ 25-29. To summarize: Plaintiff alleges that AMCO issued the insurance policy; that AMCO is "affiliated" with Nationwide and Allied; that Hartford is the agent of one (or more) of the three; and that Benbow is the agent of Hartford (and the sub-agent of AMCO, Nationwide, and/or Allied). See also *id.* ¶¶ 29-30.

---

[2] Under the Federal Rules of Civil Procedure, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(a).

Plaintiff alleges that Benbow assumed control over the repairs of the Press (Compl. ¶ 33) but then refused to authorize necessary repairs, which would have amounted to about $250,000. Instead, Benbow purportedly approved only far-less-costly temporary repairs. Plaintiff contends that Pinata lost money as a result of the slowdowns that resulted from obtaining incomplete repairs, and that Benbow and Plaintiff engaged in a back-and-forth over having more costly repairs made. See *id*. ¶¶ 34-43. The claims related to the delay have since been settled by the parties (*id.* ¶ 69), although the parties dispute the applicability of that settlement to what happened next.

On or about July 22, 2006, there was a fire inside the press, which Plaintiff alleges was caused when paper "bec[a]me trapped in the drying/curing system of the machine *during use and operation authorized by * * * Benbow*." Compl. ¶ 44 (emphasis added). At that point, one or more of the Defendants authorized the costly permanent repairs for the cracked frame as well as repairs for the fire damage. *Id.* ¶¶ 51-52. However, Defendants' accountants and Pinata disagreed over Pinata's loss of business claim related to the fire. Pinata ultimately contended that the fire caused lost business income of about $1.5 million. *Id.* ¶¶ 59, 65. Defendants' accountants ultimately placed the number at about $139,000. *Id.* ¶¶ 64, 71.

On April 26, 2007, Pinata dissolved; before doing so, the company assigned to Plaintiff any claims that it had against the Defendants. *Id.* at 74-75. Plaintiff's complaint comprises three counts: Count I – Breach of Contract (against AMCO alone); Count II – Negligence (against all Defendants); and Count III – Vexatious and Unreasonable Delay (against all Defendants). Plaintiff seeks recovery only for losses associated with the fire, as the parties have already reached a settlement with regard to losses incurred from the cracked frame. Defendants' motion seeks dismissal of all counts against Nationwide and Allied, and seeks dismissal of Counts II and

III in their entirety. The parties' arguments anticipate that Illinois law applies to the agreement, a conclusion that is likely correct. See *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 844-45 (Ill. 1995) (outlining Illinois choice of law rules with respect to insurance policies).

## II.     Legal standard on motion to dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1965, 1973 n. 14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S.Ct. at 1969. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

4

**III.    Analysis**

   **A.    Nationwide and Allied Are Not Defendants as to Count I**

Defendants move to dismiss Plaintiff's complaint with respect to both Nationwide and Allied "because the insurance policies in question were clearly issued by AMCO." Def.'s Mem. at 4; see also *id*. at 6 (asserting that it is "undisputed that AMCO, rather than Allied or Nationwide, issued the contracts in dispute"). Although Plaintiff's response brief does not squarely address Defendants' argument concerning Nationwide and Allied, Defendants appear to have been laboring under the misapprehension that Count I seeks relief against Nationwide and Allied. But the complaint itself, and Plaintiff's response brief, make clear that the allegations of Count I are against AMCO alone. See Pl.'s Mem. at 2 (citing to paragraphs of complaint alleging that AMCO issued the insurance policy); *id*. at 6 ("Count I is brought against AMCO only, and alleges breach of contract"). Accordingly, Nationwide and Allied are not now, and never were, Defendants with respect to Count I.

   **B.    Plaintiff's Negligence Claim Against AMCO is Barred by the Economic Loss Doctrine**

In Count II of the Complaint, Plaintiff alleges that Benbow "assumed supervision and control" over repair of the Press, owed a duty because of that control, breached that duty by failing to make necessary repairs, and proximately caused the July 2006 fire that led to millions of dollars in damages. See Compl. ¶¶ 155-160. Among Defendants' arguments are that the economic loss doctrine bars Plaintiff's efforts to recover in tort.

The economic loss doctrine, adopted by the Illinois courts and sometimes referred to as the *Moorman* doctrine, provides that a plaintiff cannot recover in tort for purely economic losses. See *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448-49 (Ill. App. Ct. 1982). Economic losses include those that are "for inadequate value, costs of repair and replacement of

5

[a] defective product, and consequential loss of profits." *Johnston v. Tri-City Blacktop, Inc.*, 577 N.E.2d 529, 531 (Ill. App. Ct. 1991) (citing *Moorman*, 435 N.E.2d at 449). In order to permit a recovery in tort under a commercial agreement, the plaintiff must be able to demonstrate "harm above and beyond" mere "disappointed expectations." *Ruscitti v. Atchison, Topeka, and Santa Fe Ry. Co.*, 987 F. Supp. 1039, 1043 (N.D. Ill. 1997).

The *Moorman* doctrine is premised on the broad notion that "contract law and the Uniform Commercial Code offer the appropriate remedy for economic losses occasioned by diminished commercial expectations." *In re Chicago Flood Litigation*, 680 N.E.2d 265, 275 (Ill. 1997). The breadth of the rule is reflected by the case law. See, *e.g.*, *Ruscitti*, 987 F. Supp. at 1042-44 (*Moorman* doctrine barred an action for failing to repair leased premises); *F.H. Paschen/S.N. Nielsen, Inc. v. Burnham Station, L.L.C.*, 865 N.E.2d 228, 236-37 (Ill. App. Ct. 2007) (*Moorman* barred negligent design cause of action by LLC member against architectural firm); *Johnston*, 577 N.E.2d at 530-31 (*Moorman* doctrine barred a negligence action by a shopping center owner against its general contractor); *Washington Courte Condo. Ass'n-Four v. Washington-Golf Corp.*, 501 N.E.2d 1290, 1293 (Ill. App. Ct. 1986) (*Moorman* doctrine barred tort recovery based on improper design of sink and shower).

There are exceptions to *Moorman*, but Plaintiff has not shown how any such exceptions could apply on the facts alleged here. The Illinois courts have recognized that the *Moorman* doctrine does not apply in certain cases, such as (i) property damage from a sudden and calamitous event (*United Air Lines, Inc. v. CEI Indus. of Ill., Inc.*, 499 N.E.2d 558, 560-63 (Ill. App. Ct. 1986); (ii) cases in which the party who incurred the property damage was not a party to any agreement (*City of Oakbrook Terrace v. Hinsdale Sanitary Dist.*, 527 N.E.2d 70, 76 (Ill. App. Ct. 1988)); (iii) allegations of fraud (*Ruscitti*, 987 F. Supp. at 1043); and (iv) negligent

misrepresentation by one in the business of supplying information for the guidance of others (*id.*). Plaintiff does not present allegations that plausibly suggest how any of those exceptions unfastens this case from *Moorman*'s moorings.³ Rather, Plaintiff seeks damages for AMCO's failure to live up to its end of their insurance policy bargain. That is, Plaintiff is seeking a quintessentially contractual remedy for a breach of contract. See *Oldenburg v. Hagemann*, 512 N.E.2d 718, 723 (Ill. App. Ct. 1987) (declining to "acknowledge the existence of a tort action for breach of contract"); RESTATEMENT (SECOND) OF CONTRACTS § 347 & cmt. a (1981) ("Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain.").

Plaintiff appears to conceptualize his negligence claim as arising not under tort law but under contract law. The argument, in essence, is that when the Defendants took control over the repairs, they had a contractual duty to make the repairs with reasonable care. And at least one Illinois case, albeit in a narrow setting, appears at first glance to support Plaintiff's argument. In *Mockmore v. Stone*, the Illinois Appellate Court followed a handful of other courts in holding that when an insurance company exercises its right to repair an *automobile* under a collision policy, "the insurer thereby assumes the [non-delegable] duty of having the repairs made with due care." 493 N.E.2d 746, 747 (Ill. App. Ct. 1986) (quoting 15 COUCH ON INSURANCE 2d § 54:37, at 341). See also *Venable v. Import Volkswagen, Inc.*, 519 P.2d 667, 672-73 (Kan. 1974); *Gregoire v. Ins. Co. of N. Am.*, 261 A.2d 25, 28 (Vt. 1969); *State Farm Mut. Auto. Ins. Co. v.*

---

³ Plaintiff's Response to Defendants' Motion to Dismiss argues that the damage to the Press falls within the sudden and dangerous occurrence exception. *Id.* at 11-12. However, the exception is available only where the plaintiff has both (i) an injury to *other* property (*i.e.*, not the property that was the subject of the contract) and (ii) a sudden and calamitous event. *Trans States Airlines v. Pratt & Whitney Can., Inc.*, 682 N.E.2d 45, 55 (Ill. 1997). The only property damage Plaintiff alleges relates to the Press itself (see Compl. ¶¶ 51), which means that this exception does not apply. *Cf. United Air Lines*, 499 N.E.2d at 563 (*Moorman* doctrine did not bar tort recovery for the "sudden and violent collapse of [the plaintiff's] interior ceiling upon its walls").

7

*Dodd*, 162 So.2d 621 626 (Ala. 1964), *Buerkle v. Superior Court of L.A. County*, 379 P.2d 941, 943 (Cal. 1963).

What all of the cases cited above have in common is that they involve automobile insurance policies, which this case does not. Moreover, the quotation cited in *Mockmore* (and taken from COUCH ON INSURANCE) is not, when placed in context, a broad statement about the duty of insurers to perform under their contracts. In fact, the full quotation was meant to illustrate the principle that an insurer who undertakes repairs may be liable to strangers who sustain injuries if the work is negligently done. The section, entitled "Effect on insurer's liability to others," reads:

> Where the insurer exercises its option to repair it is in the same legal position as any person making repairs, *insofar as liability to strangers is concerned*. Consequently, where a collision insurer has agreed to repair and actively takes the matter in hand, making all necessary arrangements, the reasonable conclusion is that the insurer thereby assumes the duty of having the repairs made with due care; and it is not relieved of this duty merely because it chooses to select an independent contractor to make the repairs, and refrains from exercising any supervision over his work.

15 COUCH ON INSURANCE 2d (Rev. ed.) § 54:37 at 437-38 (1983) (emphasis added) (footnotes omitted).

The court in *Mockmore* extended an insurer's duty to make repairs with due care to the *owner* of an automobile insurance policy, rather than only to strangers. The court reasoned that the decision by an insurer to effect repairs of an automobile effectively creates a new contract. 493 N.E.2d at 747 ("[T]he insurer's election to repair the vehicle together with its selection of the means by which such repairs are to be accomplished imposes a contractual liability for damages resulting from negligent repairs."). The terms of such a contract, including the standards governing the repair, are necessarily imposed by law. See *Dodd*, 162 So.2d at 626. Outside of the automobile collision insurance context, however, the Court is aware of no other

8

Illinois authority that has given effect to *Mockmore*'s rule and made it applicable to performance under other types of insurance contracts. Moreover, in light of the full quotation from COUCH ON INSURANCE, and coupled with the Illinois courts' economic loss doctrine jurisprudence, there are sound reasons to think that, at a minimum, *Mockmore* is cabined to its relatively unique setting. See, *e.g.*, *Martin v. State Farm Mut. Auto. Ins. Co.*, 808 N.E.2d 47, 53 (Ill. App. Ct. 2004) (economic loss doctrine barred recovery against insurance company under the voluntary undertaking doctrine); *Nielsen v. United Svcs. Auto. Ass'n*, 612 N.E.2d 526, 529 (Ill. App. Ct. 1993) (analyzing an insurer's duties solely with respect to the duties provided in the contract); see also *McKee-Berger-Mansueto, Inc. v. Bd. of Educ. of City of Chicago*, 691 F.2d 828, 836 (7th Cir. 1982) (task of a federal court sitting in diversity is to determine how the state courts would rule). Because Plaintiff's cause of action for negligence is foreclosed by *Moorman* and not rescued by the narrow automobile collision policy exception articulated in *Mockmore*, Defendants' motion to dismiss is granted with respect to Count II.

The analysis above applies to all of the Defendants – not just AMCO, the insurer that issued the policy at issue. Privity of contract is not required for application of the economic loss doctrine under Illinois law. See, *e.g.*, *Anderson Elec., Inc. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 247, 249 (Ill. 1986) (plaintiff, seeking to recover purely economic losses from a party with whom plaintiff had no contract, could not recover in tort "regardless of the plaintiff's ability to recover under an action in contract"); *Foxcroft Townhome Onwers Ass'n v. Hoffman Rosner Corp.*, 449 N.E.2d 125 (Ill. 1983) (looking to the nature of the injury suffered in determining whether condominium residents could recover in tort against builder and developer, and concluding that no such action could be maintained); *Redarowicz v. Ohlendorf*, 441 N.E.2d 324, 326-27 (Ill. 1982) (homeowner who purchased home from its first owner could not maintain

9

a tort action against builder for faulty construction of homeowner's residence); *Prime Leasing, Inc. v. Kendig*, 773 N.E.2d 84, 94-95 (Ill. App. Ct. 2002) (economic loss doctrine barred action by creditors against officer and directors of a corporation); *Bernot v. Primus Corp.*, 663 N.E.2d 464, 467 (Ill. App. Ct. 1996) (buyer of a home could not recover in tort against party that sold land to the homebuyer's builder); *People ex rel. Skinner v. Graham*, 524 N.E.2d 642, 652 (Ill. App. Ct. 1988) ("We * * * find the relevant inquiry to be the type of loss sustained not the nature of the relationship giving rise to the damage."); *Oldenburg*, 512 N.E.2d at 727-28 (economic loss doctrine barred tort action by subcontractor against general contractor's architect).

Plaintiff's complaint cannot plausibly be read to allege that the "affiliated" companies of Nationwide and Allied (or their alleged agent and subagent) were doing anything other than performing under Plaintiff's AMCO-issued insurance policy. See, *e.g.*, Compl. at ¶ 28 ("Hartford provided claims adjustment services * * * *pursuant to* the terms and conditions of the AMCO policy) (emphasis added). Nor can Plaintiff's complaint be read to suggest that Plaintiff seeks recovery for anything other than economic losses. See Compl. ¶¶ 59, 160 (describing, and seeking recovery of, damages for lost profits and loss of "key operating personnel and customers"); *Foxcroft*, 449 N.E.2d at 128 (holding that plaintiff's losses were "solely economic and not recoverable under a negligence theory" where there was no allegation of physical injury or damage to other property and an exception under *Moorman* did not apply). Therefore, Count II is dismissed as to all Defendants.

### C. Recovery of Attorneys Fees For "Vexatious and Unreasonable" Delay

Plaintiff's complaint also seeks to recover attorneys fees under 215 ILCS 5/155, which permits such recovery where "it appears to the court" that an insurance company's delay in making a payout under a policy was "vexatious and unreasonable" (*id.*). Defendants argue that

10

Count III of Plaintiff's complaint should be dismissed because (i) it is "expressly predicated on the allegations contained within Count II," and (ii) there was a bona fide dispute regarding the amount of settlement. Def.'s Mem. at 11-12. Neither of Defendants' arguments supports dismissal at this stage of the case.

Defendants' first argument rests on a sort of legal syllogism: Count II fails to state a viable cause of action; Count III rests on many of the same facts as Count II; therefore, Count III fails to state of cause of action. Def.'s Mem. at 12-13. However, it is not uncommon that the same set of facts can support a claim under one legal theory but not another. For example, a plaintiff would not be able to make a case for defamation if a defendant made a statement that was true, but the plaintiff could still, on the same facts, make out a case for invasion of privacy if the information that was revealed was private. *Cf. Wynne v. Loyola Univ. of Chicago*, 741 N.E.2d 669, 675-77 (Ill. App. Ct. 2000). Closer to the facts of Plaintiff and Defendants' dispute is the economic loss doctrine, discussed above. That doctrine teaches that certain claims for recovery must be brought under contract law, if at all. The fact that a plaintiff cannot bring a tort claim for negligence where she has suffered only economic loss does not *automatically* bar recovery altogether – it merely limits the litigant's available legal theories. By invoking Section 155, Plaintiff is seeking recovery that is available because the Illinois legislature made it available: so long as the statute applies, that alone is sufficient.

Defendants' second argument is that the statute does not apply. That is, Defendants argue that the delay was not "vexatious and unreasonable" because the parties had a *bona fide* dispute regarding the total payout under the insurance policy. However, the Illinois courts teach that, in order to determine whether an insurer's actions are vexatious and unreasonable, a court "must consider the totality of the circumstances." *Green v. Int'l Ins. Co.*, 605 N.E.2d 1125, 1129

11

(Ill. App. Ct. 1992). And because that inquiry presents a factual question (*Janes v. W. States Ins. Co.*, 783 N.E.2d 37, 42 (Ill. App. Ct. 2001)), the Court may not decide the issue in ruling on a motion to dismiss (*Gibson*, 910 F.2d at 1520), although the issue may be susceptible to disposition at summary judgment if the facts developed fail to show a genuine issue of disputed material fact.

Finally, to the extent that Defendants seek dismissal of Count III against Nationwide and Allied, Defendants have not provided any argument or authority in support of the proposition that an action for attorneys fees based on vexatious and unreasonable claims handling can be maintained only against the company that issued the policy in question – and not against others who are "affiliated" with that company and/or played a role in the claims handling, as is alleged here. See Compl. ¶¶ 5, 6. Accordingly, the fact that the parties agree that neither Nationwide nor Allied can be liable for breach of contract does not, on the basis of the arguments advanced at this early stage of the case, mandate dismissal as a matter of law of any of the Defendants as to Count III.[4]

---

[4] In their motion to dismiss, Defendants state that "AMCO is willing to stipulate that in the event a judgment is entered against the defendants in connection with this matter * * * AMCO would be the party solely responsible for payment." Def.'s Mem. at 6. Nothing in this Order prevents the Defendants from negotiating that stipulation among themselves, from filing such a stipulation, and/or from approaching Plaintiff in an attempt to negotiate the agreed dismissal of Defendants Nationwide and Allied on the basis of such a stipulation.

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss [7] as to Count II of the Complaint but denies the motion in all other respects, including as to Nationwide and Allied.

Dated: March 23, 2009

Robert M. Dow, Jr.
United States District Judge