**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VICTOR G. PEREZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08-cv-04364 |
| ) | |
| AMCO INSURANCE COMPANY, ) | Judge Robert M. Dow, Jr. |
| NATIONWIDE PROPERTY & ) | |
| CASUALTY INSURANCE COMPANY, ) | |
| and ALLIED PROPERTY & CASUALTY ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' motion to dismiss Counts II and III of Plaintiff's First Amended Complaint [78]. For the reasons set forth below, Defendants' motion is denied.

**I.     Background**[1]

Plaintiff, Victor G. Perez ("Perez"), is the former sole-shareholder and current assignee of a now-defunct commercial printing business called Pinata Graphics, Inc. ("Pinata"). Plaintiff filed his complaint (see [1-2]) on June 30, 2008 in the Circuit Court of Cook County. Defendants removed the action to this Court [1] pursuant to 28 U.S.C. § 1441, and subsequently filed a motion to dismiss [7], which the Court granted in part and denied in part [43]. Plaintiff then filed his First Amended Complaint ("FAC") [72]; a few weeks later, Defendants filed the instant motion to dismiss [78].

---

[1] For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

All of the Defendants are insurance companies: AMCO Insurance Company ("AMCO"), Nationwide Property & Casualty Insurance Company ("Nationwide"), and Allied Insurance Company ("Allied"). Plaintiff states that Nationwide and Allied are both "affiliated" with AMCO and that both "provide[] claims adjustment services for claims brought by policyholders of AMCO." FAC ¶¶ 5-6. All three Defendants' names appear on the first page of the insurance policy that is at the heart of this case. See [1-2] at 25.[2]

AMCO issued an insurance policy to Pinata and Plaintiff (FAC ¶¶ 7-10), the details of which are laid out in the complaint (*id.* ¶¶ 13-16), but which are not at issue for purposes of Defendants' motion to dismiss. The policy covered not only property, including Pinata's Ryobi 685 XL S/N 1084 printing press with Aqueous/U.V. Coater System ("the Press"), but also lost income. See *id.* ¶¶ 15,17.

The Press was "state of the art" and during the four year period from 2001 to 2005, Pinata enjoyed a growth in its business income. FAC ¶ 20. In 2005, the Press sustained a cracked frame as a result of an accident covered by the insurance policy. Plaintiff gave notice of the crack to AMCO, which in turn gave notice to Nationwide and Allied. One or more of the Defendants "retained adjusters, investigators and accountants to investigate the damage to the * * * Press and the loss of business income sustained as a result of the cracked frame property loss." *Id.* ¶¶ 21-23. One or more of the Defendants also gave notice of the cracked frame to Hartford Steam Boiler Inspection and Insurance Company ("Hartford"), whom Plaintiff alleges was AMCO's reinsurer. Hartford in turn retained Louis Benbow to investigate and supervise the repair of the press. *Id.* ¶¶ 25-29. To summarize: Plaintiff alleges that AMCO issued the insurance policy; that AMCO is "affiliated" with Nationwide and Allied; that Hartford is the

---

[2] Under the Federal Rules of Civil Procedure, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(a).

agent of one (or more) of the three; and that Benbow is the agent of Hartford (and the sub-agent of AMCO, Nationwide, and/or Allied). See also *id*. ¶¶ 29-30.

Plaintiff alleges that Benbow assumed control over the repairs of the Press (FAC ¶ 33) but refused to authorize necessary repairs proposed by the manufacturer of the press ("Ryobi") and the manufacturer's representative ("American Pro Tec"), which would have amounted to about $250,000. See *id*. ¶ 32. Instead, Benbow only approved far-less-costly temporary repairs, resulting in slowdowns and lost income for Plaintiff. See *id*. ¶¶ 34-43.

On or about July 22, 2006, there was a fire inside the press, which Plaintiff alleges was caused when paper "bec[a]me trapped in the drying/curing system of the machine *during use and operation authorized by * * * Benbow*." FAC ¶ 44 (emphasis added). At that point, one or more of the Defendants authorized the costly permanent repairs for the cracked frame as well as repairs for the fire damage. *Id.* ¶¶ 51-52. However, Defendants' accountants and Pinata disagreed over Pinata's loss of business claim related to the fire. Pinata ultimately contended that the fire caused lost business income of about $1.5 million. *Id.* ¶¶ 59, 65. Defendants' accountants placed the number at about $139,000. *Id.* ¶¶ 64, 71.

On April 26, 2007, Pinata dissolved; before doing so, the company assigned to Plaintiff any claims that it had against the Defendants. *Id.* at 74-75. Plaintiff's complaint comprises three counts: Count I – Breach of Contract (against AMCO alone); Count II – Negligence (against all Defendants); and Count III – Vexatious and Unreasonable Delay (against all Defendants). In November of 2007, Pinata entered an agreement ("the Settlement") settling its claim for lost business income and extra expenses arising from the cracked frame loss and releasing Defendants from "any and all claims resulting from the cracked frame property loss, while reserving any and all claims for damages caused by the fire loss." *Id.* ¶ 69.

In this lawsuit, Plaintiff seeks recovery for losses associated with the fire, as well as damages pursuant to 215 ILCS 5/155 for vexatious and unreasonable delay in settling a claim. *Id.* ¶¶ 78-79, 161-165. Defendants' motion seeks dismissal of Counts II and III in their entirety. In general, Defendants maintain that Count II is barred either by the Settlement or by this Court's prior order [43], and that it fails to plead breach of contract by Defendants. Defendants maintain that the claim set forth in Count III is barred by the Settlement.

## II. Legal Standard on Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1965, 1973 n. 14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S.Ct. at 1969. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III. Analysis

### A. Count II Pleads Breach of Contract

Defendants advance several theories for the dismissal of Count II of Plaintiff's First Amended Complaint: that it is barred by the Settlement; that it is foreclosed by the Court's prior order [43]; and that it alleges either no contractual breach at all, or a breach by some party other than Defendant. None of these contentions is well taken. The effect of the Settlement is discussed below in Part III.B—its ambiguity sinks Defendant's interpretation, at least at the motion to dismiss stage. Nor is Count II barred by the Court's prior order. As explained below, Count II plainly pleads breach of contract—it is therefore untouched by the Court's prior order, which dismissed a claim because it was a tort claim masquerading as a contract action (and therefore barred by Illinois' version of the economic loss doctrine). Finally, the question of whether the breach that Perez alleges is one for which Defendants ultimately may be held liable goes to the merits of the case, and cannot be decided on this motion. See *Gibson*, 910 F.2d at 1520.

The only potential difficulty with Count II at the pleading stage is its similarity to Count I. Counts I and II of Plaintiff's First Amended Complaint allege the same facts. Both counts incorporate paragraphs 1-75 of the Complaint, which set forth a detailed accounting of the facts constituting the breach of contract and the injuries sustained. They also allege the same injury—breach of a contract with resultant financial losses.[3] Indeed, there appear to be only two differences between Counts I and II. First, while Count I seeks damages for lost business income

---

[3] Sometimes courts require litigants to set out separate counts for each claim that is based on a separate transaction or occurrence (Fed. R. Civ. P. 10(b)), in the interest of "promot[ing] clarity." The operative complaint in this case presents the inverse circumstance: the claim for an alleged contractual breach in Count II is based on the same contract and course of conduct that is at issue in Count III, and the separate counts appear to have added confusion, rather than curing it.

and expenses, Count II seeks consequential damages based on Pinata's loss of clientele and ultimate dissolution, which Perez argues the Defendants could have reasonably foreseen. Federal pleading standards, however, do not require consequential damages to be specifically pled in order to be recoverable. *Heller Int'l Corp. v. Sharp*, 839 F. Supp. 1297, 1303 (N.D. Ill. 1993); *Universidad De Las Californias, S.C. v. Mayfair Advisors, Ltd.*, 2007 U.S. Dist. LEXIS 66351 at *5 (S.D.N.Y. 2007). Ultimately, in order to recover consequential damages, Perez must make a showing of the foreseeability of the damages—but he is not required to so at the pleading stage. *Quick Response Commercial Div., LLC v. Travelers Prop. Cas.Co. of America*, 2009 U.S. Dist. LEXIS 95438 at *5-*6 n.5 (N.D.N.Y. 2009); see *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002) (failure to specify relief to which plaintiff was entitled did not warrant dismissal under Rule 12(b)(6)). In short, Plaintiff could have made matters clearer by simply combining the allegations in Counts I and II. Indeed, were this the only difference between the two counts, the Court would simply strike Count II as duplicative. See *Beringer v. Std. Parking O'Hare J.V.*, 2008 U.S. Dist. LEXIS 91568 at *13 (7th Cir. 2008) (courts are authorized to dismiss duplicative claims alleging the same facts and same injury as another claim). But the second difference between Count I and Count II is that Count I names only AMCO and Count II names all Defendants. Because that difference is material (under any pleading standard), the Court will not strike Count II.

  **B.**  **The Settlement Agreement is Facially Ambiguous**

Defendants argue in their motion to dismiss that Count III of the First Amended Complaint must be dismissed because it targets the cracked frame property loss ("Cracked Frame Loss") rather than the loss from the fire ("Fire Loss") and therefore is barred by the November 2007 Settlement. The parties' arguments anticipate that Illinois law applies to the agreement, a

conclusion that likely is correct. See *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 844-45 (Ill. 1995) (outlining Illinois choice of law rules with respect to insurance policies). However, because the Settlement contains ambiguous, undefined terms, and because the Court cannot look outside the pleadings for evidence of the parties' intent at the motion to dismiss phase, the court denies Defendants' motion to dismiss Count III of Plaintiff's First Amended Complaint.

As a preliminary matter, the Court notes that, although attaching exhibits to a motion to dismiss may trigger conversion of the motion into one for summary judgment, the Court may consider the Settlement in the case's current posture because

> Federal Rule of Civil Procedure 10(c) provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). It is also well-settled in this circuit that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) * * * While narrow, this exception is "aimed at cases interpreting * * * a contract." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

*188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

Here, Plaintiff indeed refers to the Settlement in his pleading (FAC ¶ 69), and it is "central" to his claim, because any claim falling within the scope of the Settlement will necessarily fail. Therefore, the Court's consideration of the Settlement on a motion to dismiss[4] falls squarely within the exception. Yet, the Settlement does not help Defendants at this time: ambiguity in the agreement's language makes it inappropriate to resolve the matter at the motion to dismiss phase.

---

[4] Defendants refer to the Settlement but did not actually attach it to their motion to dismiss. Nonetheless, the Court will consider the import of the Settlement because Defendants previously filed a copy with the Court [see 8-1].

7

When a court interprets a contract, its task is to give effect to the parties' expressed intent. See *Gallagher v. Lenart*, 847 N.E. 2d 43, 58 (Ill. 2007). Under Illinois law, the Court must first consider whether the contract is ambiguous as a matter of law. *Id.* If the contract is unambiguous, the court will simply enforce it as written. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009). That is because the plain language of an agreement generally is the best evidence of the parties' intent. However, if a contract's terms are "indefinite or have a double meaning," the contract is ambiguous. *Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 379 (7th Cir. 2009). And where a contract is ambiguous, the court may look to extrinsic evidence of the parties' intent. *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 993 (7th Cir. 2007) (citing *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462-63 (1999)).

The Settlement represents the final agreement between the parties for "all claims related to property damage and business interruption arising out of the Cracked Frame Loss," but the Settlement also specifically states that Plaintiff reserves all claims related to the "Fire Loss." The terms "Cracked Frame Loss" and "Fire Loss" are critical to the scope of the Settlement; however—and despite their capitalization which indicates that the terms are terms of art—neither is defined in the Settlement. Further, Perez alleges that as a result of Defendants' refusal to authorize or perform permanent repairs to the cracked frame, paper became trapped in the drying/curing system of the Press, causing the fire. FAC ¶¶ 40-44. In other words, Plaintiff alleges that an uninterrupted chain of events connects the "Cracked Frame Loss" to the "Fire Loss," and it hardly is obvious, as a matter of the Settlement's plain language, where one ends and the other begins. In order to put a finer point on the contours and limits of the terms, the Court would need to look to extrinsic evidence, and that is not permitted when resolving a motion to dismiss. *Duda v. Bd. of Educ. of Franklin Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1055

8

n.1 (7th Cir. 1998). In short, the ambiguity that inheres in the Settlement is fatal to Defendant's motion to dismiss.

**IV.   Conclusion**

For the foregoing reasons, Defendants' motion to dismiss [78] is denied.

Dated:  April 20, 2010  
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯  
Robert M. Dow, Jr.  
United States District Judge